IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE HALL, S13136, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 23-cv-4054-DWD ) |
| G.T.L., ANTHONY WILLS, LATOYA HUGHES, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Willie Hall, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard. Specifically, Plaintiff presents claims about his access to programming and content on an electronic tablet that he purchased from G.T.L. while incarcerated.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff purchased a tablet from G.T.L. that promised the ability to access unlimited books, music, emojis, and at least 40 apps. G.T.L. is a vendor who has entered a contract of unknown terms with the Illinois Department of Corrections (IDOC) to sell tablets. Plaintiff further alleges that by purchasing a tablet, he entered into a contract with Defendants Latoya Hughes (the Director of IDOC) and Anthony Wills (the Warden of Menard) concerning his purchase, though the terms of said contract are unknown to him. The G.T.L. tablet displays a limited warranty when powered up that promises the device will be free from defect in material and workmanship under normal use for 90 days from the date of the first login to the device. (Doc. 1 at 3). The tablet also offers a support feature, which allows users to seek tech support.

The IDOC has a "confiscation sheet" process for inmates who purchase property from outside vendors. (Doc. 1 at 3-4). If an inmate purchases an item that is not allowed in the prison he will have the option to: destroy it, mail it home, have it picked up at the facility, or he may seek reconsideration of the banned status. If the inmate does not prevail in arguing that he should be allowed to possess the item, then he has 30 days to exercise one of the other options.

Upon receipt of the tablet, Plaintiff discovered that he could not access the full range of advertised materials including books, music, and emojis, that he knew to be permissible within IDOC. He was also unable to create a personal playlist. He contacted

G.T.L. about the playlist issue but got no resolution. When he attempted to access certain songs or books, such as Game of Thrones, he got an error message. He claims that the error message was a cover-up, because G.T.L. did not want to admit that the content offered was not truly unlimited, or that they had removed content with no penological justification.

Plaintiff presented five enumerated claims: a breach of contract claim against all Defendants, a false advertising claim against G.T.L, a Due Process claim against Wills and Hughes for restricting tablet content without penological justification, an Equal Protection claim against Wills and Hughes for restricting content at only some prisons, and a First Amendment religious exercise claim against Wills and Hughes for restricting his access to permissible religious texts.

Plaintiff seeks monetary damages, as well as injunctive relief in the form of access to all of the apps and content advertised on the tablet. (Doc. 1 at 13).

Although Plaintiff designated five claims of his own accord, the Court finds that reading his complaint broadly, it would be best to arrange his claims as follows. Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **First or Fourteen Amendment claim against Hughes and Wills for restricting content on the tablet with no penological justification;**
>
> **Claim 2:** **First Amendment religious exercise claim against Hughes and Wills for restricting access to religious texts on the tablet;**
>
> **Claim 3:** **Equal protection claim against Hughes and Wills for allowing inmates at different prisons to access different tablet content;**

> Claim 4:    Breach of contract claim against all Defendants for providing a defective tablet;
>
> Claim 5:    False advertising claim against G.T.L. for promising unlimited content but delivering a tablet that lacked most of the promised content.

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## PRELIMINARY MATTER

Plaintiff presented the claims in his complaint against Defendants Latoya Hughes and Anthony Wills in their individual and official capacities, and he seeks both monetary and injunctive relief. Both Hughes and Wills are employees of the Illinois Department of Corrections, which is an entity of the state. As state employees, claims against Hughes and Wills in their official capacity are really claims against the state itself, and the state is not subject to damages under 42 U.S.C. § 1983. *See e.g., Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017) (states are not among the "persons" covered by § 1983); *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (suing a prison employee in official capacity is a suit against the state agency). Accordingly, Plaintiff's claims for money damages against Wills and Hughes in their official capacities cannot proceed.

By contrast, an individual may proceed against a state employee in his or her official capacity for injunctive relief. *See e.g., Reed v. Goertz*, 598 U.S. 230, 234 (2023) (the *Ex Parte Young* doctrine allows suits for declaratory or injunctive relief against state officers in their official capacities); *Greenawalt v. Ind. Dept. of Corr.*, 397 F.3d 587, 588 (7th Cir. 2005) ("§ 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."). Accordingly, Plaintiff may proceed against Wills and Hughes in the official capacity to the extent he seeks injunctive relief.

### ANALYSIS

Plaintiff framed Claim 1 against Defendants Hughes and Wills as a Fourteenth Amendment Due Process claim in relation to the limits they have placed on content available on the tablet, but the Court reads his pro se complaint broadly and finds that such a claim would be better founded in the First Amendment. Some of the language that Plaintiff included to describe this claim even directly mimics the language used to assess a regulation on an inmate's First Amendment rights, so interpreting Plaintiff's complaint in this fashion is logical and appropriate. The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005); *see also, Scruggs v. Pullins*, 2023 WL 5368879 at *2 (N.D. Ind. Aug. 22, 2023) (allowing an inmate to proceed on a First Amendment claim on the theory that denying him access to a tablet device deprived him the right to access information like other inmates with tablets). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89

(1987). By contrast, "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996).

Here, Plaintiff argues that the restriction of material on the tablet is *not* reasonably related to a penological interest, and in fact, it defies reason because the restricted content includes things that are explicitly permitted in prison. For example, he alleges that on the tablet he is unable to access books, music, and religious texts that are all permitted at Menard. Plaintiff further alleges that the restrictions on this content are the by-product of a contract between Defendants G.T.L., Hughes, and Wills. Plaintiff's First Amendment claim is sufficient to proceed against Wills and Hughes on the premise that they have participated in restricting access to content on the tablet without any penological justification.

For now, Plaintiff will be allowed to proceed on Claim 1 against Defendants Hughes and Wills for their alleged participation in banning or restricting materials from Plaintiff's tablet without penological justification. However, the Court notes that § 1983 liability relies largely on personal responsibility for actions that violate the constitution. High-level administrators are not held liable for the actions of their subordinates, nor are they held generally responsible merely because they hold a high-ranking position in a public entity. Accordingly, if Plaintiff is ultimately unable to establish that they were personally involved in restricting the content discussed above, then his claims against them may fail.

Much like the First Amendment claim concerning regular books and music on the tablet, Claim 2 about Plaintiff's access to religious texts is analyzed under a similar set of

standards.  Prisoners have a right to exercise their religion under the free-exercise clause of the First Amendment, but this right is subject to reasonable restrictions tied to legitimate penological objectives.  *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011).  To establish a religious exercise claim, an inmate must allege that (1) he holds a sincere religious belief, and (2) that his religious practice has been substantially burdened by the prison policy or regulation.  *Turner*, 482 U.S. at 89.  Here, Plaintiff argues that the Qu'ran and other texts that are allowed in the prison are not allowed on the tablet.  While his allegations are sufficient to suggest a restriction that might be without legitimate penological justification, Plaintiff has not alleged in any way that this limitation substantially burdens his religious practice, so Claim 2 is insufficient to proceed as pled.

In Claim 3, Plaintiff alleges that Hughes and Wills have also violated his right to Equal Protection because they allow inmates at other prison facilities to have access to different tablet content.  This is an equal protection claim premised on a "class of one" theory, which alleges that an individual has "intentionally been treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).  "Prisoners do not surrender their rights to equal protection at the prison gate.  Unequal treatment among inmates, however, is justified if it bears a rational relation to legitimate penal interest."  *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988).  The Seventh Circuit has noted in recent years that they are unsettled on the exact nature of proof required for a class-of-one claim, but they added recently that, "a class-of-one plaintiff plead and prove that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a

personal nature unrelated to the duties of the defendant's position." *Frederickson v. Landeros*, 943 F.3d 1054, 1066 (7th Cir. 2019) (the presence of animus is powerful evidence of potentially irrational government conduct, government conduct motivated solely by personal dislike is the canonical example of irrational and arbitrary); *see also Jordan v. Cockroft*, 490 Fed. App'x 813, 815-16 (7th Cir. 2012) (noting the Court is divided on the necessity of showing illegitimate animus, but finding that a plaintiff must at least show intentionally discriminatory treatment).

Here, Plaintiff alleges that inmates at other prisons have access to a broader range of content and programming on the tablets without any penological justification or explanation. However, he does not allege anything that suggests this differentiation between inmates at Menard and inmates at other prisons has been implemented deliberately for reasons of a personal nature. Plaintiff's complaint lacks any genuine suggestion of animus and given the Seventh Circuit's expressed concern in *Frederickson* that class-of-one claims based on discretionary government decisions could become overly susceptible to equal protection attacks the Court finds it appropriate to dismiss the claim as insufficiently pled. Plaintiff does not suggest that Wills and Hughes had any personal animus that drove their different selection of programming for different prisons, and the Court is unwilling to infer this on Plaintiff's behalf because such an inference would invite frequent class-of-one attacks on all sorts of discretionary decisions made in the prison environment.

**Claims 4-5**

Claims 4 and 5 are premised on state law and do not have an independent federal basis, so they may only proceed with this case if the Court exercises supplemental jurisdiction over the claims. *See* 28 U.S.C. § 1367. The Court will exercise supplemental jurisdiction over claims that are a part of the same case or controversy, but it may decline to exercise supplemental jurisdiction in some circumstances, including if the state law claims substantially predominate over the federal claims or if all the federal claims have been dismissed. 28 U.S.C. § 1367(c).

Here, the Court will allow the state law claims against Hughes, Wills, and G.T.L. to proceed for the time-being because it is not clear if the limitations on content accessible via the Plaintiff's tablet are caused by Defendants Hughes and Wills' directions, or if the content is not accessible because G.T.L.'s product is actually defective or misrepresents what is available. If it becomes apparent that the problems are wholly dependent on G.T.L. and have nothing to do with Hughes and Wills, then the Court will relinquish jurisdiction over these state law claims.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1, 4, and 5** of the Complaint (Doc. 1) survive initial screening as described above against Defendants Latoya Hughes, Anthony Wills, and G.T.L.. By contrast, Plaintiff may not proceed on Claims 2 and 3 because they are insufficient as pled.

The Clerk of Court is **DIRECTED** to prepare for Defendant Latoya Hughes, Anthony Wills, and G.T.L.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED**

to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: February 29, 2024

/s/ *David W. Dugan*
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.